David Donahue (ddonahue@fzlz.com)
Emily Weiss (eweiss@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, NY 10036
(212) 813-5900

*Attorneys for Plaintiff The Black Keys Partnership,
composed of Daniel Quine Auerbach and Patrick James Carney*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BLACK KEYS PARTNERSHIP, composed of DANIEL QUINE AUERBACH and PATRICK JAMES CARNEY,<br><br>                Plaintiff,<br>v.<br><br>CHONG S. KIM and BLACK KEYS LLC,<br><br>                Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff, The Black Keys Partnership, composed of Daniel Quine Auerbach and Patrick James Carney (the "band," "The Black Keys," or "Plaintiff"), by its undersigned attorneys Fross Zelnick Lehrman & Zissu, P.C., for its Complaint against defendants Black Keys LLC and Chong S. Kim (together, "Defendants") alleges as follows:

SUBSTANCE OF THE ACTION

1.  Plaintiff is a partnership composed of the members of The Black Keys, one of the most successful and popular rock bands of the last decade. The band has won six Grammy awards and its last four albums have been certified platinum or gold by the Recording Industry Association of American ("RIAA"), reflecting millions of albums sold. Moreover, the band has supported each of its albums with extensive touring, playing sold-out shows in large and historic venues including Madison Square Garden, and has appeared on every major late night talk show,

including making two appearances on *Saturday Night Live*. The band also has sold a substantial amount of merchandise, including without limitation clothing, bearing the mark THE BLACK KEYS. As a result, the name and mark THE BLACK KEYS has become well known in the United States in connection with a variety of Plaintiff's goods and services and is an extremely valuable asset of Plaintiff.

2.      Long after Plaintiff obtained rights in its THE BLACK KEYS mark, Defendants began to use the BLACK KEYS mark for clothing and Defendant Kim obtained a trademark registration for the mark BLACK KEYS in connection with various apparel products. Through the use of the BLACK KEYS mark, Defendants are unfairly trading on the fame of Plaintiff's trademark and reputation.

3.      To protect its rights in THE BLACK KEYS mark, Plaintiff brings this action for trademark infringement under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); trademark dilution under Section 360-*l* of the New York General Business Law; and trademark infringement and unfair competition under the common law of the State of New York. Plaintiff seeks permanent injunctive relief, an accounting of Defendants' profits flowing from their misuse of Plaintiff's trademark, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## PARTIES

4.      Plaintiff The Black Keys Partnership, composed of Daniel Quine Auerbach and Patrick James Carney, is a partnership organized and existing under the laws of Ohio with a principal place of business at 2300 Charlotte Avenue, Suite 103, Nashville, Tennessee 37203.

5. Upon information and belief, Defendant Black Keys LLC is a limited liability company organized and existing under the laws of New Jersey with a principal place of business at 730 Grand Avenue, Unit 2K, Ridgefield, New Jersey 07657.

6. Upon Information and belief, Defendant Chong S. Kim is an individual with an address of 730 Grand Avenue, Unit 2K, Ridgefield, New Jersey 07657, is the managing member of Defendant Black Keys LLC, and has orchestrated, directly participated in, and materially contributed to all of Defendant Black Keys LLC's infringing conduct complained of herein.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a), and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338(b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over Defendants under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because Defendants continuously and systematically conduct, transact, and solicit business in this district, and/or because Defendants offer their infringing products for sale to and facilitate purchase of their products by consumers from this district, including by shipping and selling products in and to this district.

9. Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c), because Defendants are subject to personal jurisdiction in this district due to their transaction of business herein, and because a substantial portion of the events at issue have arisen and will arise in this judicial district and Plaintiff is suffering harm in this district.

## FACTS COMMON TO ALL
## CLAIMS FOR RELIEF

### A. Plaintiff and THE BLACK KEYS Mark

10. The Black Keys, formed in 2001, consists of accomplished singers, musicians, and songwriters Daniel Auerbach and Patrick Carney. Although a rock band, its sound draws heavily from blues influences, creating the unique sound for which the band has become famous. Over the past fifteen years, the band has experienced enormous success and critical acclaim under the name and mark THE BLACK KEYS.

11. The Black Keys released its first album *The Big Come Up* in 2002, which was followed by the album *Thickfreakness* in 2003. Both albums received positive reviews, and *Thickfreakness* firmly put The Black Keys on the national stage. *Time* magazine named *Thickfreakness* the third-best album worldwide of 2003, and The Black Keys supported the album through extensive touring and appearances, including, for example, an appearance on the television show *Late Night with Conan O'Brien*.

12. The Black Keys continued to receive accolades with its third album *Rubber Factory*, released in 2004, with both *Entertainment Weekly* and *The New Yorker* naming it one of the best albums of the year and the album appearing on the *Billboard* 200 chart. The band's next two albums, *Magic Potion* in 2006 and *Attack & Release* in 2007, also appeared on the *Billboard* 200 chart, with *Attack & Release* debuting at number 14. *Attack & Release* was eventually certified gold by the RIAA when over 500,000 units were sold.

13. In 2010, The Black Keys released its most successful album to date, *Brothers*. The album peaked at number two on the *Billboard* 200 chart and was certified platinum by the RIAA. In addition, the album's first single "Tighten Up" was the band's first song to appear on the *Billboard* 100 chart and the single was certified gold by the RIAA. The band received the

Grammy awards for Best Alternative Music Album for *Brothers* and for Best Rock Performance by a Duo or Group with Vocals for "Tighten Up." Moreover, the band's creative director won the Grammy for Best Recording Package for the album's artwork.

14. The band's success continued with its seventh album *El Camino*, which was released in 2011. *El Camino* debuted at number two on the *Billboard* 200 chart and sold more than 200,000 copies in its first week. The album was certified platinum by the RIAA, and numerous publications listed *El Camino* as one of the best albums of 2011, including *Time* and *Rolling Stone*. Two of the album's singles, "Lonely Boy" and "Gold on the Ceiling," appeared on the *Billboard* 100 chart. "Lonely Boy" was certified platinum by the RIAA and "Gold on the Ceiling" was certified gold. The Black Keys put on a successful arena tour in support of *El Camino*, selling out Madison Square Garden in fifteen minutes. The band won the Grammy awards for Best Rock Album for *El Camino* and for Best Rock Performance and for Best Rock Song for "Lonely Boy."

15. In 2014, the band released the album *Turn Blue*, which debuted at number one on the *Billboard* 200 chart. The band was nominated for three Grammy awards for *Turn Blue* and its lead single "Fever."

16. As a result of the success of the band, its albums, and its tours, THE BLACK KEYS mark has achieved considerable renown among consumers throughout the United States.

17. The band also has licensed its music for use in over 700 films, television shows, trailers, commercials, video games, and Broadway shows. For example, the band's music has played in commercials for Nissan, Cadillac, Chevy, Subaru, Sony, Victoria's Secret, Zales, AT&T, Samsung, Adobe, and Lee Jeans; in the television shows and films *Grey's Anatomy*, *Rush Hour*, *Lucifer*, *Longmire*, *Neighbors*, *Hawaii 5-0*, *CSI*, *Criminal Minds*, *Sons of Anarchy*,

*The Blacklist*, *Bad Words*, and *Boyhood*; in trailers and promotions for *Monster Trucks*, *Battleship*, *The Monuments Men*, *Bad Words*, *Big Little Lies*, *Guitar Hero*, *Dexter*, *Younger*, and *Alvin 4*; in the video game *Grand Theft Auto IV*; and in the Broadway play *Sweat*. Such licensing exposes the goods and services offered under THE BLACK KEYS mark to millions of additional consumers.

18. Moreover, in addition to musical recordings and entertainment services, Plaintiff has used the mark THE BLACK KEYS in connection with a variety of merchandise, including, without limitation, apparel, hats, books, posters, stickers, and buttons.

19. In addition to the extensive and strong common law rights in THE BLACK KEYS mark, Plaintiff also owns U.S. Registration No. 4,139,578 for THE BLACK KEYS mark for use in connection with the following goods and services:

"Computer software featuring music and musical based entertainment; audio and audiovisual recordings featuring music and musical entertainment; downloadable audio and audiovisual recordings featuring music and musical entertainment; phonograph records, pre-recorded magnetic tapes, discs, cassettes, compact discs, DVDs featuring music; downloadable telephone ring tones featuring music; electronic publications, namely, electronic liner notes, brochures and newsletters in the field of music and musical entertainment" in International Class 9, based on a first use in commerce of May 14, 2002;

"books in the field of music and musical entertainment; photography books in the field of music; pictures and photographs of musical artists and performers; art prints; posters; stickers; printed tour schedules for musical performances and concerts" in International Class 16, based on a first use in commerce of April 30, 2002;

{F2340165.3 }                                    6

"clothing, namely, shirts; t-shirts; sweatshirts; hooded sweatshirts" in International Class 25, based on a first use in commerce of April 30, 2002;

"streaming of audio and audiovisual material on the Internet; transmission of audio and audiovisual content featuring music and musical based entertainment via telecommunications networks; transmission and distribution of musical sound and video content via telecommunications networks" in International Class 38, based on a first use in commerce of April 30, 2003; and

"entertainment services, namely, music production services; entertainment in the nature of live musical performances; entertainment services, namely, nondownloadable ring back tones and pre-recorded music presented to mobile communications devices via global computer network and wireless networks; entertainment services, namely, live music concerts and events featuring live musical performances; arranging and conducting of concerts and live music events; production of musical audio sound and audiovisual video recordings; record production; production of audio sound and audiovisual video recordings featuring live musical performances; providing a web site featuring entertainment information on musical artists, musical concert tours and events including downloadable and streaming audio and audiovisual musical content, sound recordings, and other music-based entertainment content and information; providing nondownloadable electronic publications in the nature of online newsletters and liner notes in the field of music and musical entertainment" in International Class 41, based on a first use in commerce of April 30, 2002.

20. The above registration is valid, subsisting, and in full force and effect. A true and correct printout from the United States Patent and Trademark Office ("USPTO") database showing the ownership and status of this registration is annexed hereto as **Exhibit A**.

21. Through its use of THE BLACK KEYS mark for fifteen years, the band's extensive touring and sales success, the various awards and critical acclaim earned by the band, and the extensive promotion and sales of products and services offered under THE BLACK KEYS mark, THE BLACK KEYS mark has become well-known to consumers as identifying and distinguishing the source of Plaintiff's products and services exclusively and uniquely. As a result, THE BLACK KEYS mark has come to represent enormous goodwill.

### B. Defendants' Unlawful Conduct

22. On information and belief, Defendants are in the business of distributing, offering for sale, and selling apparel products.

23. Defendants operate a business under the name and mark BLACK KEYS and use this mark in connection with their sale of apparel products. Defendants use the mark BLACK KEYS both in standard character format and as part of the design mark shown below, which includes a design featuring piano keys:



("Defendants' Design Mark," and together with the BLACK KEYS mark in standard character format, "Defendants' Mark").

24. Annexed hereto as **Exhibit B** are images showing representative samples of apparel that Defendants offer in connection with Defendants' Mark.

25. Defendants offer their infringing products through e-commerce websites and in brick-and-mortar stores, including at least one retail store in Bronx, New York.

26. On information and belief, Defendants' use of Defendants' Mark commenced more than a decade after Plaintiff began using its well-known THE BLACK KEYS mark and after The Black Keys achieved significant commercial and critical success.

27. Notwithstanding Plaintiff's prior rights in its THE BLACK KEYS mark, including for goods in International Class 25, Defendant Kim obtained U.S. Registration No. 5,111,079 for Defendants' Design Mark for use in connection with various apparel and accessories in International Class 25, which is based on a first use in commerce of March 17, 2016. A true and correct printout from the USPTO database showing title and status of this registration, and showing the full list of goods recited, is annexed hereto as **Exhibit C**.

28. Defendants' use of Defendants' Mark in connection with apparel and accessories falsely represents that Defendants' goods come from, are approved by, or are otherwise associated with Plaintiff.

29. Defendants' Mark is nearly identical to Plaintiff's well-known THE BLACK KEYS mark. Defendants' Mark wholly incorporates the source-identifying portion of Plaintiff's THE BLACK KEYS mark, namely the terms BLACK KEYS. In addition, Defendants' Design mark presents the terms BLACK KEYS with a design depicting a piano, which calls to mind Plaintiff and its musical goods and services.

30. Moreover, Defendants are using Defendants' Mark on apparel products, the same goods for which Plaintiff has long used THE BLACK KEYS mark and for which Plaintiff owns a federal trademark registration. Defendants' apparel products sold under Defendants' Mark

bear other trademarks and designs relating to well-known musicians and bands, which further exacerbates the likelihood that consumers will associate Defendants' Mark with Plaintiff.

31. Defendants' use of the confusingly similar Defendants' Mark commenced long after Plaintiff developed strong rights in its well-known THE BLACK KEYS mark and well after Plaintiff's THE BLACK KEYS mark was registered in the USPTO.

32. Defendants are not associated or affiliated with Plaintiff and have never been authorized or otherwise licensed by Plaintiff to use Defendants' Mark in connection with the sale or offering for sale of any products.

33. Upon information and belief, Defendants' infringing conduct is being done willfully and with full knowledge of Plaintiff's prior exclusive rights in THE BLACK KEYS mark and with knowledge that the mark is associated exclusively with products and services of Plaintiff. Moreover, by virtue of Plaintiff's federal registration, Defendants are on constructive notice of Plaintiff's prior exclusive rights in THE BLACK KEYS mark.

34. Defendants currently have actual knowledge of Plaintiff's rights in THE BLACK KEYS mark. On July 24, 2017, Plaintiff sent Defendants a cease-and-desist letter, advising Defendants of Plaintiff's rights in THE BLACK KEYS mark and requesting that Defendants cease using Defendants' Mark.

35. Defendants' foregoing acts confirm that Defendants are acting with the deliberate intent to ride on the goodwill of Plaintiff's THE BLACK KEYS mark. The goodwill that Plaintiff has built up in THE BLACK KEYS mark through years of substantial investment and effort is put at risk by virtue of Defendants' use of the confusingly similar Defendants' Mark to sell and advertise their goods.

36. Defendants' conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

37. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

38. Defendants' unauthorized use of Defendants' Mark for goods identical in type to those provided by Plaintiff under THE BLACK KEYS mark is likely to cause confusion or to cause mistake or to deceive Defendants' customers or potential consumers and the public as to the source or sponsorship of Defendants' goods. Consumers are likely to be misled into believing that Defendants' products are manufactured by, licensed by, sponsored by, approved by, or otherwise associated with Plaintiff.

39. Defendants were on both constructive notice, and, upon information and belief, actual notice of Plaintiff's exclusive rights in the registered THE BLACK KEYS mark prior to Defendants' use of Defendants' Mark.

40. Defendants' conduct constitutes infringement of Plaintiff's federally registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41. Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and, unless enjoined by this Court, will continue to both damage Plaintiff and deceive the public. Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a)(1)(A))

42. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

43. Defendants' use of Defendants' Mark constitutes false designation of origin and false representation with respect to the origin and nature of Defendants' goods. Defendants' use of Defendants' Mark is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and is likely to create the false impression that Defendants are affiliated with Plaintiff or that their goods are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff.

44. Defendants' use of Defendants' Mark in connection with their products threatens to destroy the value, exclusivity, and reputation of Plaintiff's THE BLACK KEYS mark.

45. Defendants' conduct constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and, unless enjoined by this Court, will continue to both damage Plaintiff and deceive the public. Plaintiff has no adequate remedy at law.

THIRD CLAIM FOR RELIEF
TRADEMARK DILUTION UNDER
<u>NEW YORK LAW (N.Y. General Business Law § 360-*l*)</u>

47. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

48. As a result of extensive use and promotion of THE BLACK KEYS mark and the goods and services offered thereunder by Plaintiff for over fifteen years, THE BLACK KEYS mark is well-known throughout the United States, is highly distinctive of Plaintiff's goods and services, and is widely recognized among the consuming public as a designation of source of Plaintiff's goods and services.

49.     Defendants' unauthorized use of Defendants' Mark is diluting and is likely to continue diluting Plaintiff's THE BLACK KEYS mark by blurring the distinctiveness thereof. Such unauthorized use is likely to injure Plaintiff's business reputation in that it has removed Plaintiff's reputation from its own control, in violation of Section 360-*l* of the General Business Law of the State of New York.

50.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and, unless enjoined by this Court, will continue to both damage Plaintiff and deceive the public. Plaintiff has no adequate remedy at law.

FOURTH CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT AND
UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

51.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

52.     The aforesaid conduct of Defendants constitutes unfair competition and trademark infringement under the common law of the State of New York.

53.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and, unless enjoined by this Court, will continue to both damage Plaintiff and deceive the public. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

1)      That a permanent injunction be issued enjoining Defendants, any entity owned, controlled or managed in whole or in part by Defendants, and the agents, privies, attorneys, servants, employees, affiliates, successors, assigns, and heirs of the foregoing and all others in active concert or participation with any of them from:

      (a)    using Defendants' Mark or any other mark that incorporates the terms BLACK KEYS or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation thereof (collectively, the "Prohibited Designations") in or as part of any mark or logo or otherwise on or in connection with any goods or services or on or in connection with the manufacturing, producing, distributing, selling, offering for sale, making available for sale, advertising, marketing, displaying, promoting, trading in, supplying, accepting orders for, or filling orders for any goods;

      (b)    using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with Plaintiff or that any product imported, manufactured, distributed, or sold by Defendants are in any manner associated or connected with Plaintiff, or is authorized, licensed, sponsored, or otherwise approved by Plaintiff;

      (c)    filing, maintaining, or retaining any registration or application to register Defendants' Design Mark or any other Prohibited Designation;

      (d)    engaging in any other activity constituting unfair competition with Plaintiff, constituting an infringement of THE BLACK KEYS mark, or diluting THE BLACK KEYS mark; and

      (e)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above.

      2)    Directing that Defendants deliver up to Plaintiff's attorney for destruction all products bearing Defendants' Mark or any other Prohibited Designation, and any goods, labels,

tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements, and other materials bearing a Prohibited Designation in Defendants' possession, custody or control.

3) Directing that Defendants, at their own expense, recall from any distributors, retailers, vendors, consumers, or others to whom it has distributed any goods bearing a Prohibited Designation, and that Defendants deliver up to Plaintiff for destruction all products returned to it.

4) Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which he has complied with the above.

5) Directing that the USPTO cancel Defendant Kim's U.S. Registration No. 5,111,079 pursuant to 15 U.S.C. § 1119.

6) Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement, unfair competition, and trademark dilution.

7) Awarding Plaintiff all gains, profits, property, and advantages derived by Defendants from their unlawful conduct.

8) Awarding to Plaintiff exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

9) Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

10) Awarding to Plaintiff interest, including pre-judgment interest on the foregoing sums.

11) Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
August 29, 2017

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____  
David Donahue (ddonahue@fzlz.com)  
Emily Weiss (eweiss@fzlz.com)  
4 Times Square, 17th Floor  
New York, NY 10036  
Tel: (212) 813-5900

*Attorneys for Plaintiff The Black Keys Partnership, composed of Daniel Quine Auerbach and Patrick James Carney*